## CT CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
01/31/2008
CT Log Number 513037270

**TO:**   Barnes Chatelain
Federal Insurance Company
3445 Peachtree Road NE, Suite 900
Atlanta, GA 30326-1276

**RE:**   **Process Served in Tennessee**

**FOR:**   FEDERAL INSURANCE COMPANY (Domestic State: IN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Loeb Properties, Inc., Pltf. vs. Federal Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Return, Complaint, Exhibits |
| **COURT/AGENCY:** | 30th Judicial District Circuit Court at Memphis, TN<br>Case # CH0800721 |
| **NATURE OF ACTION:** | Insurance Litigation - Summons & Complaint - Breach of Contract |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 01/31/2008 postmarked on 01/28/2008 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after the summons has been served upon you, not including the day of service |
| **ATTORNEY(S) / SENDER(S):** | William G. Whitman<br>Bass, Berry & Sims, PLC<br>100 Peabody Place<br>Suite 900<br>Memphis, Tn 38103<br>901-543-5900 |
| **ACTION ITEMS:** | Telephone, Barnes Chatelain , 404-266-4009<br>SOP Papers with Transmittal, via  Fed Ex 2 Day , 791489639657<br>Email Notification, Barnes Chatelain bchatelain@chubb.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>800 S. Gay Street<br>Suite 0221<br>Knoxville, TN 37929-9710 |
| **TELEPHONE:** | 865-342-3522 |



*CHUBB*
*FEB 0 . 2008*
*CLAIMS/DALLAS* ②

*RECEIVED
FEB - 1 2008*

Page 1 of  1 / BC

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

**EXHIBIT
A**



STATE OF TENNESSEE
**DEPARTMENT OF COMMERCE AND INSURANCE**
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

January 25, 2008

Federal Insurance Company
800 South Gay Street, Ste 2021, % C T Corp.
Knoxville, TN  37929-9710
NAIC # 20281

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7006 2760 0002 9673 8863
Cashier # 1377

Re: Loeb Properties, Inc.   V.   Federal Insurance Company

   Docket # CH-08-0072-1

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Breach Of Contract Complaint was served on me on January 24, 2008 by Loeb Properties, Inc. pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Chancery Court of Shelby County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Shelby County
    140 Adams Street, Rm 308
    Memphis, Tn 38103



Service of Process 615.532.5260

(~~CHANCERY~~/~~CIRCUIT~~) COURT OF TENNESSEE
140 ADAMS AVENUE MEMPHIS, TENNESSEE 38103
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

SUMMONS IN CIVIL ACTION

NO. *CH-08-0072-1* ___AD DAMNUM   $_____   AUTO ☐ OTHER ☒

**LOEB PROPERTIES, INC.**
_____

PLAINTIFF

vs.

**FEDERAL INSURANCE COMPANY**
_____

DEFENDANT

Home Address
**825 Valleybrook Drive, Memphis, TN  38120**
Business Address

**c/o Tennessee Department of Commerce and Insurance**
**500 James Robertson Parkway, Nashville, TN  37243-1131**
Home Address

Business Address

TO THE DEFENDANT(S): **FEDERAL INSURANCE COMPANY c/o TENNESSEE DEPARTMENT OF COMMERICE AND INSURANCE, 500 James Robertson Parkway, Nashville, TN  37243-1131**

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on __William G. Whitman__ Plaintiff's attorney, whose address is __100 Peabody Place, Suite 900, Memphis, TN 38103__, telephone **901-543-5900** within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

TESTED AND ISSUED *January 14*, 20*08*

JIMMY MOORE, Clerk
DEWUN SETTLE, Clerk & Master
By *B. Reynolds*, D.C.

TO THE DEFENDANT(S):

NOTICE: Pursuant to Chapter 919 if the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portrait, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

**COST BOND**

I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs not to exceed $500.00 m this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same.

Witness My Hand this _____ day of _____, 20 _____

Certification when applicable

*CK # 12281 for $15.00 attached*

I, DEWUN SETTLE, Clerk & Master
of the Chancery Court, Shelby County,
Tennessee, certify this to be a true and
accurate copy as filed this *14th January, 2008*
DEWUN SETTLE, Clerk & Master

By: *B. Reynolds*, D.C.

Surety

I, JIMMY MOORE, Clerk of the Circuit
Court, Shelby County, Tennessee, certify
this to be a true and accurate copy as filed
this _____
JIMMY MOORE, Clerk

By: _____, D.C.

Front

## RETURN ON SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I HAVE SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20 _____ at _____M.

a copy of the summons and a copy of the Complaint to the following defendants

_____

Mark Luttrell, Sheriff

By _____

Deputy Sheriff

### PRIVATE PROCESS SERVER

I HEREBY CERTIFY THAT I HAVE SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____M. a copy of the

summons and a copy of the Complaint to the following defendants

_____

### (PLEASE PRINT THE FOLLOWING)

_____          _____
Private Process Server                                   Address

                                                         _____
_____          Phone
Company                                                  _____
                                                         Signature
Other manner of service:

_____

_____

_____

I hereby certify that I have NOT served this Summons on the within named defendant(s) _____

_____

because_____ is / are not to be found in this County for the following

reason(s): _____

_____

Mark Luttrell, Sheriff

This _____ day of _____, 20 _____.          By _____

Deputy Sheriff

No. CH-08-0026-1

IN THE
CHANCERY COURT
OF TENNESSEE
FOR THE THIRTIETH
JUDICIAL DISTRICT AT MEMPHIS

SUMMONS IN CIVIL ACTION

LOEB PROPERTIES, INC.   PLAINTIFF

VS.

FEDERAL INSURANCE CO.   DEFENDANT

Came to hand ......................................

WILLIAM G. WHITMAN
Attorney for Plaintiff

Tel. No.  901-543-5900

66766
49.1

Back

## IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
### FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | | |
|---|---|---|
| **LOEB PROPERTIES, INC.** | ) | |
| | ) | |
|    **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.** *CH-08-0073-1* |
| | ) | |
| | ) | |
| **FEDERAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
|    **Defendant.** | ) | |

FILED
SHELBY COUNTY
CHANCERY COURT
JAN 1 1 2008
DEWUN R. SETTLE, C & M
TIME:_____ BY:_____

## COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

**TO THE HONORABLE CHANCELLORS OF THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE:**

Plaintiff, Loeb Properties, Inc. ("Loeb"), for its Complaint against Defendant, Federal Insurance Company ("FIC"), states as follows:

### PARTIES AND JURISDICTION

1.     Loeb is a Tennessee corporation with its principal place of business located at 825 Valleybrook Drive, Memphis, Shelby County, Tennessee 38120.

2.     Upon information and belief, Federal Insurance Company ("FIC") is a member of Chubb Group of Insurance Companies. FIC is a corporation duly organized and existing under the laws of the State of Indiana. FIC's principal place of business is located at 251 North Illinois Suite 1100, Indianapolis, Indiana 46204. FIC is engaged in the business of, among other things, providing property insurance coverage. The registered agent for FIC in the State of Tennessee is the State of Tennessee Department of Commerce and Insurance and service for FIC may be

obtained through the State of Tennessee Department of Commerce and Insurance, 500 James

Robertson Parkway, Nashville, Tennessee, 37243-1131.

## JURISDICTION & VENUE

3.      Among other things, this action seeks declaratory relief in a case of actual

controversy pursuant to Tenn. Code Ann. § 29-14-101, *et seq.* ant Tennessee Rule of Civil

Procedure 57, and is brought to determine the respective rights, liabilities, and obligations under

and pursuant to an insurance agreement as reflected in a policy of insurance purchased by Loeb

from FIC.

4.      This Court has jurisdiction over this cause of action pursuant, *inter alia*, to Tenn.

Code Ann. §§ 16-11-102; 16-11-103; 20-2-222; and 20-2-223.

5.      Venue is proper in this Court pursuant, *inter alia*, to Tenn. Code Ann. § 20-4-101.

## FACTS

6.      Loeb is insured by FIC.

7.      FIC issued a Forefront Portfolio Policy, Policy Number 8173-3073, (the "Policy")

to Loeb, which was effective from September 1, 2005 through September 1, 2006.

8.      Among other items, the Policy contained a crime coverage section, specifically

insuring Loeb against employee theft.  The crime coverage section of the Policy is attached to

the Complaint as **Exhibit A** and is incorporated herein by reference.

9.      The Policy provides a one million dollar limit of liability for employee theft.

10.     The Policy provides that FIC shall pay Loeb for losses sustained by Loeb from

theft or forgery committed by an employee.

11.     The Policy defines "employee" to mean "any natural person in the regular service

of an Insured Organization in the ordinary course of such Insured Organization's business, whom

such Insured Organization governs and directs in the performance of such service . . . ."
(**Exhibit A** at § II ¶ (J), p.5.)

12.    FIC's liability under the Policy applies to any money, securities or property ". . . held by the Insured Organization **in any capacity** whether or not the Insured Organization is liable. . . ." (**Exhibit A** at § IV ¶ (A), p.11.)   The stolen property that is subject of this claim was "money or property held by Loeb in any capacity."   Loeb was responsible to Bob Loeb for the stolen property.

13.    While the Policy contains numerous exclusions and while FIC provides coverage for personal accounts, the Policy does not expressly exclude personal accounts maintained by employees of Loeb in the course of their job.

14.    Jamie Edwards ("Edwards") was a resident citizen of Senatobia, Mississippi residing at 1180 LRL Road, and was previously an employee of Loeb.

15.    Edwards served as Executive Assistant to Louis Loeb and to Bob Loeb, President of Loeb.

16.    As part of her specific duties and responsibilities as an employee of Loeb, Edwards maintained and handled for Bob Loeb personal checking accounts owned by Bob Loeb and his wife, Cathy Loeb.  Edwards personally maintained the checkbooks and bank account statements for these joint bank accounts maintained by Bob Loeb at Boatmen's Bank (n/k/a Bank of America), First Tennessee Bank, and Independent Bank.

17.    In the spring of 2006, Loeb discovered that Edwards was embezzling funds from Loeb from June of 1996 through and including March of 2006.

18.    From June of 1996, through and including March of 2006, Edwards, in her capacity as employee of Loeb, stole money from the bank accounts of Bob and Cathy Loeb and

took action to cover up her dishonest acts.  The methods by which Edwards did so included taking checks from the accounts, cashing them, and keeping the proceeds; taking checks and paying such checks to third parties for Edwards' own benefit; and, taking checks and paying her own personal credit cards with Bob and Cathy Loebs' funds.  Edwards has admitted her wrongdoing and the acts of theft are not in dispute.

19.     The losses from the cashed checks were not less than $180,050.00 (inclusive of $43,300.00 in missing checks) and the losses from credit card payments were not less than $188,296.19 (net of $16,100.00 which we recovered from the credit card companies) for a total of $368,346.19.

20.     On May 23, 2006, Loeb timely filed a claim with its insurer, FIC, pursuant to Loeb's crime and employee theft coverage under the Policy.

21.     Loeb is insured by FIC.  Loeb gave proper and timely notice of its employee theft claim for damages to FIC.  Loeb has in all respects complied with the terms and conditions of FIC's Policy.  In violation of the Policy, FIC wrongfully declined Loeb's claim to pay Loeb for its losses and damages associated with employee theft.  In failing to provide coverage to Loeb for its damages associated with the employee theft, FIC breached the terms of the Policy.

22.     On December 18, 2006, FIC denied Loeb's claim.

## CAUSES OF ACTION

## COUNT I:  BREACH OF CONTRACT

23.     The allegations of paragraphs 1 through 22 are incorporated herein by reference in their entirety.

24.     In violation of FIC's Policy, FIC wrongfully declined Loeb's claim to pay Loeb for its losses and damages associated with employee theft, breaching the terms of the Policy.

4

25.     Loeb suffered damages totaling not less than $368,346.19.

## COUNT II:   DECLARATORY JUDGMENT

26.     The allegations of paragraphs 1 through 25 are incorporated herein by reference in their entirety.

27.     Loeb incorporates the allegations of the preceding paragraphs as if set forth in this paragraph in full.

28.     FIC breached the Policy.

29.     Loeb is entitled to a declaratory judgment (i) declaring that the Policy covered Loeb for its and Bob Loeb's losses associated with Loeb's employee, Jamie Edwards, embezzling funds from Bob and Cathy Loeb's personal accounts, which she handled and maintained in the ordinary course of her job as Executive Assistant; (ii) declaring and ordering FIC to pay Loeb all of its losses associated with the employee theft; and (iii) entering judgment against FIC and in Loeb's favor for same, plus pre- and post-judgment interest and costs.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Loeb, prays that the Court:

a)     Issue proper process requiring FIC to respond to the Complaint within the time allowed by law;

b)     Award Loeb its actual damages in an amount to be established at trial, but not less than $368,346.19;

c)     Award Loeb accruing pre-judgment interest, post-judgment interest, and costs of this action; and,

d)      Grant Loeb such other and further relief, both general and specific, to which this

Court might find Loeb is entitled under the premises.

Respectfully submitted,

John S. Golwen (14324)
William G. Whitman (23376)
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, Tennessee  38103
(901) 543-5900
(901) 543-5999 – Facsimile

*Attorneys for Plaintiff, Loeb Properties, Inc.*



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059



*ForeFront Portfolio*<sup>SM</sup> — rendered below

**ForeFront Portfolio**<sup>SM</sup>
**Crime Coverage Section**

---

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
a stock insurance company, incorporated under the
laws of Indiana, herein called the **Company**.

**READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.   Parent Corporation:**

LOEB PROPERTIES, INC.
5264 POPLAR AVE.
MEMPHIS, TN 38119

**Item 2.   Coverage is only available for the following as indicated by X:**

| Insuring Clauses | Limits of Liability | Deductible Amount |
|---|---|---|
| (A) ☒ Employee Theft: Insuring Clause (A): | $1,000,000.00 | $5,000.00 |
| (B) ☒ Premises: Insuring Clause (B): | $1,000,000.00 | $5,000.00 |
| (C) ☒ In Transit: Insuring Clause (C): | $1,000,000.00 | $5,000.00 |
| (D) ☒ Forgery:  Insuring Clause (D): | $1,000,000.00 | $5,000.00 |
| (E) ☒ Computer Fraud: Insuring Clause (E): | $1,000,000.00 | $5,000.00 |
| (F) ☐ Funds Transfer Fraud: Insuring Clause (F): | Not Covered | Not Covered |
| (G) ☐ Money Order And Counterfeit Currency Fraud: Insuring Clause (G): | Not Covered | Not Covered |
| (H) ☐ Credit Card Fraud: Insuring Clause (H): | Not Covered | Not Covered |
| (I) ☐ Client Coverage: Insuring Clause (I): | Not Covered | Not Covered |
| (J) ☐ Expense Coverage: Insuring Clause (J): | Not Covered | Not Applicable |

**Item 3.   Coverage only applies as indicated by X.**

(A) ☒ Loss Sustained; or

(B) ☐ Loss Discovered



EXHIBIT
*A*
tabbies





**ForeFront Portfolio**$^{SM}$
*Crime Coverage Section*

CHUBB

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

I.    INSURING CLAUSES

(A)    **Employee Theft Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.

(B)    **Premises Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from:

(1)    **Robbery**; **Safe Burglary**; or unlawful taking of **Money** or **Securities**; by a **Third Party**; or

(2)    actual destruction or disappearance of **Money** or **Securities**;

within or from the **Premises** or **Banking Premises**. Coverage under this Insuring Clause shall also include:

(a)    loss of or damage to **Property** by **Robbery** or attempted **Robbery** within the **Premises**;

(b)    loss of or damage to such **Property** contained within any safe which results from **Safe Burglary** or attempted **Safe Burglary** within the **Premises**;

(c)    damage to a locked safe, cash drawer, cash box or cash register within the **Premises** by felonious entry or attempted felonious entry or loss by felonious abstraction of such container from within the **Premises**; and

(d)    damage to the **Premises** resulting from **Safe Burglary** or **Robbery**;

committed by a **Third Party**.

(C)    **In Transit Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from:

(1)    **Robbery**; or unlawful taking of **Money** or **Securities**; by a **Third Party**; or

(2)    actual destruction or disappearance of **Money** or **Securities**;

while **In Transit** or while temporarily within the home of an **Employee** or a partner of an **Insured Organization**. Coverage under this Insuring Clause shall also include:

(a)    damage to **Property** by **Robbery** while **In Transit**; and



**ForeFront Portfolio**<sup>SM</sup>
*Crime Coverage Section*

(b)     loss by the unlawful taking of **Property** temporarily within the home of an **Employee** or a partner of an **Insured Organization**;

committed by a **Third Party**.

(D)     **Forgery Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**.

(E)     **Computer Fraud Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Computer Fraud** committed by a **Third Party**.

(F)     **Funds Transfer Fraud Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Funds Transfer Fraud** committed by a **Third Party**.

(G)     **Money Orders And Counterfeit Currency Fraud Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Money Orders And Counterfeit Currency Fraud** committed by a **Third Party**.

(H)     **Credit Card Fraud Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Credit Card Fraud** committed by a **Third Party**.

(I)     **Client Coverage**

The **Company** shall pay the **Parent Organization** for direct loss sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees.

(J)     **Expense Coverage**

If Expense Coverage is purchased, as set forth in Item 2(J) of the Declarations for this Coverage Section, the **Company** shall pay the **Parent Organization** for:

(1)     **Investigative Expenses** resulting from any direct loss covered under Insuring Clauses (A) through (I); or

(2)     **Computer Violation Expenses** resulting from any direct loss covered under Insuring Clauses (A), (E) or (I);

incurred by any **Insured Organization** in the amount set forth in Item 2(J) of the Declarations for this Coverage Section, solely if such covered direct loss is in excess of the Deductible Amount applicable to such covered direct loss. Such amount shall be part of and not in addition to the Limit of Liability applicable to such covered direct loss.

14-02-3801 (Ed. 04/01)          Page 3 of 15

 

**ForeFront Portfolio**<sup>SM</sup>
*Crime Coverage Section*

**CHUBB**

---

II.    **DEFINITIONS**

For the purposes of this Coverage Section:

(A)    **Banking Premises** means the interior portion of a building occupied by, or the night depository chute or safe maintained by, any bank, trust company or similar institution.

(B)    **Client** means a customer of an **Insured Organization** to whom an **Insured Organization** provides goods or services under written contract or for a fee.

(C)    **Computer Fraud** means the unlawful taking of **Money, Securities** or **Property** resulting from a **Computer Violation.**

(D)    **Computer System** means a computer or network of computers, including its input, output, processing, storage and communication facilities, and shall include off-line media libraries.

(E)    **Computer Violation** means an unauthorized:

(1)    entry into or deletion of data from a **Computer System;**

(2)    change to data elements or program logic of a **Computer System,** which is kept in machine readable format; or

(3)    introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System;**

directed solely against any **Insured Organization.**

(F)    **Computer Violation Expenses** means reasonable expenses, other than an **Insured Organization's** internal corporate costs (such as employee remuneration), incurred by an **Insured Organization** with the **Company's** prior written consent to reproduce or duplicate damaged or destroyed electronic **Data** or computer programs.  If such computer programs cannot be duplicated from other computer programs, then **Computer Violation Expenses** shall also include reasonable costs incurred for computer time, computer programmers, technical experts or consultants to restore the computer programs to substantially the same level of operational capability immediately preceding the covered direct loss.  **Computer Violation Expenses** shall not include expenses incurred by any **Client.**

(G)    **Credit Card Fraud** means the **Forgery** or alteration of, on or in, any written instrument required in connection with any credit card issued to an **Insured Organization** or at the request of an **Insured Organization,** to any partner, officer or **Employee** of an **Insured Organization.**

(H)    **Data** means information contained in records, accounts, microfilms, tapes or other records, whether or not contained in a **Computer System.**



**For Front Portfolio**<sup>SM</sup>
***Crime Coverage Section***

(I)   **Discovery** or **Discovered** means knowledge acquired by an **Executive** or **Insurance Representative** of an **Insured** which would cause a reasonable person to believe a covered loss has occurred or an occurrence has arisen that may subsequently result in a covered loss.  This includes loss:

   (1)   sustained prior to the inception date of any coverage under this Coverage Section;

   (2)   which does not exceed the Deductible Amount as set forth in the Declarations of this Coverage Section; or

   (3)   the exact amount or details of which are unknown.

   **Discovery** or **Discovered** shall not include knowledge acquired by an **Executive** or **Insurance Representative** of an **Insured** acting alone or in collusion with an **Employee**, or the knowledge possessed by any **Executive** or **Insurance Representative** who is a participant in the **Theft** or **Forgery**.

(J)   **Employee** means any:

   (1)   natural person in the regular service of an **Insured Organization** in the ordinary course of such **Insured Organization's** business, whom such **Insured Organization** governs and directs in the performance of such service, including any part-time, seasonal, leased and temporary employees as well as volunteers;

   (2)   **Executive** while performing acts within the scope of the usual duties of an **Employee**; or

   (3)   natural person fiduciary, trustee, administrator or **Employee** of a **Sponsored Plan** and any other natural person required to be bonded in connection with such **Sponsored Plan** by Title 1 of the Employee Retirement Income Security Act of 1974, as amended.

(K)   **Executive** means any natural person specified below:

   (1)   duly elected or appointed directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America;

   (2)   in-house general counsel of any **Insured Organization** incorporated in the United States of America; or

   (3)   equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any other jurisdiction anywhere in the world.

(L)   **Financial Instrument(s)** means checks, drafts or similar written promises, orders or directions to pay a sum certain in money, that are made, drawn by or drawn upon an **Insured Organization** or by anyone acting as an **Insured Organization's** agent, or that are purported to have been so made or drawn.

(M)   **Forgery** means the signing of another natural person's name with the intent to deceive, but does not mean a signature that includes one's own name, with or without authority, in any capacity for any purpose.  Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.



**For Front Portfolio**<sup>SM</sup>
**Crime Coverage Section**

CHUBB

(N)  **Funds Transfer Fraud** means fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by an **Insured Organization** at such institution, without an **Insured Organization's** knowledge or consent.

(O)  **Insurance Representative** means an **Employee**, including a risk manager, designated to represent an **Insured** for the purpose of effecting and maintaining insurance.

(P)  **Insured** means the **Insured Organization** and any **Sponsored Plan**.

(Q)  **In Transit** means being conveyed outside the **Premises**, from one person or place to another, by the **Insured Organization** within the custody of:

(1)  an **Employee** or a partner of an **Insured Organization**; or

(2)  a person authorized by an **Insured Organization** to have custody of **Money, Securities** or **Property**.

Such conveyance begins immediately upon receipt of **Money, Securities** or **Property**, by the person(s) described in (1) or (2) above, from any **Insured Organization**, and ceases immediately upon delivery to the designated recipient or its agent.

(R)  **Investigative Expenses** means reasonable expenses, other than an **Insured Organization's** internal corporate costs (such as employee remuneration), incurred by an **Insured Organization** with the **Company's** prior written consent to establish the existence and amount of a covered loss. **Investigative Expenses** shall not include expenses incurred by any **Client**.

(S)  **Money** means currency, coin, bank notes and bullion.

(T)  **Money Orders And Counterfeit Currency Fraud** means the good faith acceptance:

(1)  in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

(2)  in the regular course of business, of counterfeit United States of America or Canadian paper currency.

(U)  **Premises** means the interior portion of a building occupied by an **Insured Organization** in conducting its business.

(V)  **Property** means tangible property other than **Money** or **Securities**.

(W)  **Robbery** means the unlawful taking of **Money, Securities** or **Property** from the custody of an **Employee**, or other person (except a person acting as a watchman, porter or janitor) authorized by an **Insured Organization** to have custody of such **Money, Securities** or **Property**, by violence or threat of violence, committed in the presence and cognizance of such person.

(X)  **Safe Burglary** means the unlawful taking of **Money, Securities** or **Property** by forcible or violent entry evidenced by visible marks, from a locked vault or safe located within the **Premises**.

ForeFront Portfolio<sup>SM</sup>
**Crime Coverage Section**

(Y)    **Salary** means compensation an **Insured Organization** pays an **Employee**, including but not limited to bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

(Z)    **Securities** means negotiable and non-negotiable instruments representing either **Money** or **Property**.

(AA)   **Sponsored Plan** means:

    (1)    any Employee Benefit Plan, Pension Benefit Plan, Welfare Benefit Plan, as each are defined in the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by the **Insured Organization** or jointly by the **Insured Organization** and a labor organization for the benefit of the **Employees** of the **Insured Organization** located anywhere in the world and which existed on or before the inception of this Coverage Section or which is created or acquired after the inception of this Coverage Section;

    (2)    any other employee benefit plan or program not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, sponsored solely by the **Insured Organization** for the benefit of the **Employees**, including any excess benefit plan located anywhere in the world and which existed on or before the inception of this Coverage Section or which is created or acquired after the inception of this Coverage Section; or

    (3)    any other plan, fund, or program specifically included as a **Sponsored Plan** by endorsement to this Coverage Section.

    **Sponsored Plan** shall not include any multi-employer plan.

(BB)   **Theft** means the unlawful taking of **Money, Securities** or **Property** to the deprivation of:

    (1)    an **Insured**, solely for the purposes of Insuring Clause (A); or

    (2)    a **Client**, solely for the purposes of Insuring Clause (I).

(CC)   **Third Party** means a person other than an **Insured** or **Employee**.

## III.   EXCLUSIONS

(A)    No coverage will be available under this Coverage Section for:

    (1)    loss resulting directly or indirectly from any authorized or unauthorized trading of **Money, Securities** or **Property**, whether or not in the name of the **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion (A)(1) shall not apply to direct losses caused by **Theft** or **Forgery** which result in improper financial gain to an **Employee** (direct losses as used herein shall mean only the amount of improper financial gain to such **Employee**, which shall not include **Salary**, commissions, fees or other compensation, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**);

    (2)    loss of trade secrets, confidential processing methods or other confidential information of any kind;





**ForeFront Portfolio**<sup>SM</sup>
*Crime Coverage Section*

(3)   Theft or **Forgery** committed against an **Insured Organization** by a partner of such **Insured Organization** whether acting alone or in collusion with others; provided that, if **Theft** or **Forgery** committed by such partner would have resulted in a covered loss, the **Company** shall pay the amount which exceeds such partner's percentage ownership of the **Insured Organization**, on the day immediately preceding the date of **Discovery**, multiplied by the **Insured Organization's** total assets as reflected in such **Insured Organization's** most recent audited financial statements;

(4)   loss due to declared or undeclared war, civil war, insurrection, rebellion or revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization; or any act or condition incident to any of the foregoing;

(5)   loss due to nuclear reaction, nuclear radiation or radioactive contamination;

(6)   loss of income not realized as the result of a covered loss;

(7)   indirect or consequential loss of any kind; provided that this Exclusion (A)(7) shall not apply to otherwise covered **Investigative Expenses** and **Computer Violation Expenses** under Insuring Clause (J);

(8)   expenses incurred:

    (a)   as a result of the reconstitution of **Data** if an **Insured Organization** knowingly uses illegal copies of programs;

    (b)   to render the **Data** usable by replacement processing equipment;

    (c)   to design, update or improve software or programs or to perfect their operation or performance; or

    (d)   as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the **Computer System**;

(9)   loss caused by an **Employee** which is sustained by an **Insured**:

    (a)   after an **Insured** becomes aware of a **Theft**, **Forgery**, or other fraudulent or dishonest act committed by such **Employee** while employed with an **Insured**;

    (b)   after an **Executive** or **Insurance Representative** acquires at any time knowledge of fraud or dishonesty, involving **Money**, **Securities** or other property valued at twenty-five thousand dollars ($25,000) or more, committed prior to employment with an **Insured**; or

    (c)   more than sixty (60) days following the termination of such **Employee**.

(10)  loss due to fire, provided that this Exclusion (A)(10) shall not apply to:

    (a)   loss of **Money** or **Securities**; or

    (b)   damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**;

**ForeFront Portfolio**<sup>SM</sup>
*Crime Coverage Section*

(11)    fees, costs or expenses incurred or paid by an **Insured** in defending or prosecuting any legal proceeding or claim; provided that this Exclusion (A)(11) shall not apply to the coverage provided under Section VI Legal Expenses Extension;

(12)    loss due to an **Insured** knowingly having given or surrendered **Money, Securities or Property** in any exchange or purchase with a **Third Party**, not in collusion with an **Employee**; provided that this Exclusion (A)(12) shall not apply to **Money Orders And Counterfeit Currency Fraud;**

(13)    loss sustained by one **Insured** to the advantage of any other **Insured;**

(14)    loss of or damage to **Money, Securities or Property** while in the custody of any bank, trust company, similar recognized place of safe deposit, armored motor vehicle company or any person who is duly authorized by the **Insured Organization** to have custody of the property; provided that this Exclusion (A)(14) shall not apply to the extent that coverage under this Coverage Section is excess of the amount recovered or received by the **Insured Organization** under:

    (a)    the **Insured Organization's** contract, if any, with, or insurance carried by, any of the foregoing; or

    (b)    any other insurance or indemnity in force which would cover the loss in whole or in part;

(15)    loss due to the unlawful taking of **Money, Securities or Property, Computer Fraud** or any other fraudulent, dishonest or criminal act (other than **Robbery or Safe Burglary**), by any authorized representative of the **Insured Organization**, other than an **Employee**, provided that such authorized representative is not acting in collusion with any **Employee.**

(B)    No coverage will be available under Insuring Clause (A) or (I) for loss caused by any broker, factor, commission merchant, consignee, contractor, independent contractor or other agent or representative of the same general character.

(C)    No coverage will be available under Insuring Clause (B) or (C) for:

    (1)    loss or damage due to **Forgery, Computer Fraud or Funds Transfer Fraud;** or

    (2)    loss of or damage to **Money, Securities or Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company.

(D)    No coverage will be available under Insuring Clauses (B), (C), (E) and (F) for loss or damage of **Money, Securities** or other property as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**) surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to the **Premises** or other property.

(E)    No coverage will be available under Insuring Clause (D) for loss due to **Forgery** or alteration of:

    (1)    any **Financial Instrument** committed by any **Third Party** in collusion with any **Employee;** or





**ForeFront Portfolio**<sup>SM</sup>
*Crime Coverage Section*

  (2)   any registered or coupon obligations issued or purported to have been issued by the **Insured**, or any coupons whether attached or detached.

(F)   No coverage will be available under Insuring Clause (H) for loss caused by any forgery or alteration of, on or in any written instrument; provided that this Exclusion (F) shall not apply if:

  (1)   the provisions, conditions and other terms under which the involved credit card was issued were fully complied with; and

  (2)   the **Insured Organization** is legally liable to the issuer of such credit card for such loss.

(G)   No coverage will be available under this Coverage Section if the Loss Discovered option is purchased, as set forth in Item 3 of the Declarations of this Coverage Section, for any loss that the **Insured** is aware of prior to the Inception date of this Coverage Section.

(H)   If the Loss Sustained option is purchased, as set forth in Item 3 of the Declarations of this Coverage Section, no coverage will be available under this Coverage Section for:

  (1)   loss unless sustained by any **Insured** prior to the termination of this Coverage Section as to such **Insured** and **Discovered** and written notice thereof is given to the **Company** within sixty (60) days following such termination;

  (2)   loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause and **Discovered** and written notice thereof is given to the **Company** within sixty (60) days following such termination; or

  (3)   loss unless sustained prior to the termination of this Coverage Section in its entirety, and **Discovered** and written notice thereof is given to the **Company**:

    (a)   within sixty (60) days following such termination, if this Coverage Section is not renewed with the **Company**;

    (b)   prior to such termination, if this Coverage Section is renewed with the **Company**; or

    (c)   within one (1) year following such termination, if the termination results from the voluntary liquidation or voluntary dissolution of the **Parent Corporation**.

(I)   If the Loss Discovered option is purchased as set forth in Item 3 of the Declarations of this Coverage Section, no coverage will be available under this Coverage Section for:

  (1)   loss unless sustained by any **Insured**, **Discovered** and written notice thereof is given to the **Company** prior to the termination of this Coverage Section as to such **Insured**;

  (2)   loss unless sustained, **Discovered** and written notice thereof is given to the **Company** prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause;

  (3)   loss unless sustained, **Discovered** and written notice thereof is given to the **Company** prior to the termination of this Coverage Section in its entirety; or

14-02-3801 (Ed. 04/01)                Page 10 of 15



**ForeFront Portfolio**<sup>SM</sup>
*Crime Coverage Section*

(4)    loss unless sustained prior to the termination of this Coverage Section and **Discovered** and written notice thereof is given to the **Company**, within one (1) year following such termination if the termination results from the voluntary liquidation or voluntary dissolution of the **Parent Corporation**.

---

**IV.   OWNERSHIP**

(A)    Solely for the purposes of Insuring Clauses (A) through (H), the **Company's** liability under this Coverage Section will apply only to the **Money, Securities** or **Property** owned by the **Insured Organization** or for which the **Insured Organization** is legally liable, or held by the **Insured Organization** in any capacity whether or not the **Insured Organization** is liable; provided that:

    (1)    the **Company** will not be liable for damage to the **Premises** unless the **Insured Organization** is the owner or is liable for such damage; or

    (2)    with respect to Insuring Clause (A) the **Company's** liability will not apply to **Money, Securities** or **Property** of a **Client**.

(B)    Solely for the purposes of Insuring Clause (I), the **Company's** liability under this Coverage Section will apply only to the **Money, Securities** or other **Property** of a **Client**, which is held by the **Insured Organization** in any capacity or for which the **Insured Organization** is legally liable.

---

**V.   SPONSORED PLAN**

Solely with respect to any **Sponsored Plan**, payment by the **Company** for covered loss to the **Parent Corporation** shall be held by such **Parent Corporation** for the use and benefit of the **Sponsored Plan** sustaining such loss.  The Limit of Liability applicable to any **Sponsored Plan** shall equal the lesser of ten percent (10%) of the **Sponsored Plan's** assets as of the beginning of such **Sponsored Plan's** fiscal year or five hundred thousand dollars ($500,000) ("Amended Limit of Liability"); provided, however, that the following additional conditions shall also apply with respect to such coverage:

(1)    Loss Involving One **Sponsored Plan**:

    (a)    If the applicable Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section is less than the Amended Limit of Liability, then the applicable Limit of Liability shall be the Amended Limit of Liability; or

    (b)    If the applicable Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section equals or exceeds the Amended Limit of Liability, then the applicable Limit of Liability shall be the Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section; or





**For*Front Portfolio**<sup>SM</sup>
*Crime Coverage Section*

(2)    Loss Involving More Than One **Sponsored Plan**:

    (a)    If the applicable Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section is less than the Amended Limit of Liability as calculated for each **Sponsored Plan**, then the applicable Limit of Liability for each **Sponsored Plan** shall be the Amended Limit of Liability as calculated for each **Sponsored Plan**; or

    (b)    If the applicable Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section equals or exceeds the Amended Limit of Liability as calculated for all such **Sponsored Plans**, then the applicable Limit of Liability for all such **Sponsored Plans** combined shall be the Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section.

For the purposes of **Sponsored Plan** coverage hereunder, the words "sixty (60) days" are deleted from the exclusions applicable to this Coverage Section, wherever they appear, and the words "one (1) year" are substituted in place thereof.    Solely with respect to loss sustained by a **Sponsored Plan**, no Deductible Amount shall apply to such loss.

## VI.    LEGAL EXPENSES EXTENSION

In addition to the Limits of Liability set forth in the Declarations, the **Company** shall be liable for:

(A)    with respect to **Forgery** coverage under Insuring Clause (D), reasonable court costs and attorneys' fees incurred and paid with the **Company's** prior written consent in defending an **Insured Organization** or an **Insured Organization's** bank in any legal proceeding brought against it to enforce payment of a **Financial Instrument**.

(B)    with respect to **Credit Card Fraud** coverage under Insuring Clause (H), reasonable court costs and attorneys' fees incurred and paid with the **Company's** prior written consent in defending an **Insured Organization** in any legal proceeding brought against it to enforce payment of a written instrument, required in connection with any credit card.

## VII.    LIABILITY FOR PRIOR LOSSES

(A)    If the Loss Sustained option is purchased, as set forth in Item 3 of the Declarations for this Coverage Section:

    (1)    Coverage will be available for loss sustained prior to the inception date of this Coverage Section, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, subject to the following:

        (a)    an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy;

        (b)    such coverage continued without interruption from the time such loss was sustained until the inception date or effective date specified in paragraph (1) above;

        (c)    such loss was first **Discovered by an Insured** after the time allowed for discovery under the last such policy; and



*ForeFront Portfolio*<sup>SM</sup>
*Crime Coverage Section*

    (d)    some or all of the coverage of an Insuring Clause under this Coverage Section would be applicable to such prior loss;

(2)    If such prior bond or policy carried by the **Insured** or predecessor in interest of such **Insured** was issued by the **Company** or its affiliates, such prior bond or policy shall terminate as of the inception of this Coverage Section and such prior bond or policy shall not cover any loss not discovered and noticed to the **Company** prior to the inception of this Coverage Section; and

(3)    The **Insured** shall neither be entitled to a separate recovery under each policy in force at the time any part of the prior loss was sustained, nor shall the **Insured** be entitled to recover the sum of the limits of liability of any such policies. The **Company's** maximum liability for the prior loss shall not exceed the lesser of either the limit of liability of the policy immediately preceding this Coverage Section under which part of the prior loss was sustained, or the applicable Limit of Liability as set forth in the Declarations of this Coverage Section.

(B)    If the Loss Discovered option is purchased, as set forth in Item 3 of the Declarations of this Coverage Section:

(1)    Coverage will be available for loss sustained at any time and **Discovered** during the **Policy Period**, provided that coverage for loss sustained prior to the effective date of this Coverage Section, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, is subject to the following:

    (a)    if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was not issued by the **Company** or its affiliates and such loss was first **Discovered** by an **Insured** prior to the expiration of the time allowed for discovery under the last such policy, then no coverage shall be available under this Coverage Section, unless the total amount of covered loss exceeds the limit of liability of the last such bond or policy carried by the **Insured** or predecessor in interest of such **Insured**, and the **Company's** Limit of Liability for any such loss will be in excess of the limit of liability of the last bond or policy subject to all of the terms and conditions of this Coverage Section; or

    (b)    if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was issued by the **Company** or its affiliates then such prior bond or policy shall terminate as of the inception of this Coverage Section and such prior bond or policy shall not cover any loss not discovered and noticed to the **Company** prior to the inception of this Coverage Section and then the **Company's** Limit of Liability for such loss shall be the applicable Limit of Liability shown on the Declarations of this Coverage Section.

---

**VIII.    LIMITS OF LIABILITY**

(A)    The **Company's** maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations of this Coverage Section, regardless of the number of **Insureds** sustaining the loss.





**For Front Portfolio**<sup>SM</sup>
*Crime Coverage Section*

**CHUBB**

(B)  If a direct loss is covered under more than one **Insuring Clause**, the maximum amount payable under this Coverage Section shall not exceed the largest applicable Limit of Liability of any such Insuring Clause.

(C)  All loss resulting from a single act or any number of acts of the same **Employee** or **Third Party**, and all loss whether such act or acts occurred before or during the **Policy Period**, will be treated as a single loss and the applicable Limit of Liability of this Coverage Section will apply, subject to Section VII Liability for Prior Losses.

## IX.    NON-ACCUMULATION OF LIABILITY

(A)  When there is more than one **Insured**, the maximum liability of the **Company** for loss sustained by one or all **Insureds** shall not exceed the amount for which the **Company** would be liable if all losses were sustained by any one **Insured**.

(B)  Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, the amount the **Company** shall pay for any loss shall not be cumulative from year to year or from **Policy Period** to **Policy Period**.

## X.    PROOF OF LOSS AND LEGAL PROCEEDINGS

(A)  Knowledge possessed by any **Insured** or **Discovery** shall be deemed knowledge possessed by or **Discovery** by all **Insureds**.

(B)  It is a condition precedent to coverage hereunder that, upon **Discovery**, the **Parent Corporation** will:

    (1)  give written notice to the **Company** at the earliest practicable moment, and in no event later than ninety (90) days after such **Discovery**;

    (2)  furnish a proof of loss with full particulars to the **Company** within six (6) months of such **Discovery**, including:

        (a)  submission to examination under oath at the **Company's** request;

        (b)  production of all pertinent records at such reasonable times and places as the **Company** shall designate; and

    (3)  provide full cooperation with the **Company** in all matters pertaining to a loss or claim.

(C)  The **Parent Corporation** may offer a comparison between an **Insured Organization's** inventory records and actual physical count of its inventory to prove the amount of loss, only where an **Insured Organization** establishes wholly apart from such comparison that it has sustained a covered loss, caused by an identified **Employee**.

(D)  No **Insured** shall institute legal proceedings against the **Company**:

    (1)  after two (2) years immediately following any **Discovery**; or

    (2)  to recover a judgment or settlement against it or its bank resulting from **Forgery, Credit Card Fraud** or related legal expenses as set forth in Section VI Legal Expenses



**For Front Portfolio**<sup>SM</sup>
*Crime Coverage Section*

Extension, after two (2) years immediately following the date upon which such judgment shall become final or settlement was entered.

---

**XI.   VALUATION AND FOREIGN CURRENCY**

The **Company** shall pay:

(A)   the least of:

   (1)   the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**;

   (2)   the cost of replacing **Securities**; or

   (3)   the cost to post a Lost Instrument Bond;

   Such cost shall be paid by the **Company** on behalf of an **Insured**;

(B)   the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

(C)   the least of:

   (1)   the price paid by an **Insured** for the **Property**; or

   (2)   the cost to repair or replace **Property** with that of similar quality and value at the time the **Parent Organization** complies with Section X Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss; or

(D)   the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**.

---

**XII.   OTHER INSURANCE**

If the **Insured** or any other party in interest in any loss covered by this Coverage Section has any bond, indemnity or insurance which would cover such loss in whole or in part in the absence of this Coverage Section, then this Coverage Section shall be null and void to the extent of the amount recoverable or received under such other bond, indemnity, or insurance; but this Coverage Section shall cover such loss, subject to its exclusions, conditions and other terms, only to the extent of the amount of such loss in excess of the amount recoverable or received under such other bond, indemnity or insurance.