IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| LOEB PROPERTIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:08-cv-2093-JPM-cmc |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the Parties' cross-motions for summary judgment. Defendant Federal Insurance Company ("Federal") filed its motion for summary judgment on January 12, 2009. (Def.'s Mot. for Summ. J. (Docket Entry ("D.E.") 13).) Plaintiff Loeb Properties, Inc. ("LPI") also filed its motion for summary judgment on January 12, 2009. (Pl.'s Mot. for Summ. J. (D.E. 16).) LPI filed a response to Federal's motion on February 23, 2009. (Pl.'s Resp. (D.E. 19).) Federal filed a response to LPI's motion, also on February 23, 2009. (Def.'s Resp. (D.E. 21).) The Court held a telephonic hearing on the Parties' motions on April 23, 2009. Present for LPI were John Golwen, Esq. and William Whitman, Esq.; present for Federal was Fred Statum, III, Esq. For the following

1

reasons, the Court GRANTS Federal's motion for summary judgment and DENIES LPI's motion for summary judgment as moot.

**I. Background**

This case arises out of an insurance coverage dispute. The Parties largely agree on the facts. To the extent the facts are in dispute, in granting Federal's motion for summary judgment, the Court will view the facts in the light most favorable to LPI.

LPI is a Tennessee corporation engaged in the business of commercial real estate ownership and management. (Def.'s Mem. in Support of Mot. for Summ. J. (D.E. 14) Ex. 1, Stmnt. of Mat. Facts ("Def.'s Stmnt. of Mat. Facts") 2.) From May 15, 2000 through September 1, 2006, LPI had a crime coverage insurance policy (the "Policy") with Federal, an Indiana insurance corporation with its principal place of business in New Jersey. (Pl.'s Mot. for Summ. J. (D.E. 16), Ex. 3 Stmnt. of Undisp. Facts ("Pl.'s Stmnt. of Undisp. Facts") 1.) In general terms, the Policy insured LPI against employee theft. (Notice of Removal (D.E. 1), Ex. 1 (the "Policy") 12-25.)

Bob Loeb is LPI's Chairman, President, and Chief Executive Officer. (Id.) Bob Loeb and his wife, Kathy Loeb (herself not an LPI employee), jointly owned a personal checking account.[1]

---

[1] It appears that the Loebs had several personal checking accounts, and that they moved these accounts among several banks over the relevant period. The conduct of LPI and Mrs. Edwards appears to have been standardized toward the

2

(Def.'s Stmnt. of Mat. Facts 3.) The money in this account was Bob and Kathy Loeb's property; LPI did not own this money, nor was it used to pay LPI obligations. (Id.)

One of LPI's employees, Jamie Edwards, had certain job duties toward the Loebs' personal account that are key to the resolution of this matter. According to LPI's Chief Financial Officer, Earl Williams, Mrs. Edwards's duties were as follows. She kept Mr. Loeb's checkbook in her desk at LPI. (Williams Dep. (D.E. 15) 101:20-102:1.) The Loebs' account statements and reordered checks were sent to her at LPI. (Pl.'s Mot. for Summ. J., Ex. G (Affidavit of Earl Williams) ¶ 7.) She prepared checks for Mr. Loeb's signature. (Williams Dep. 89:20-90:04.) She handled "minor deposits" into the Loebs' account (Id. at 78:9-79:6), reconciled the account, and assisted with preparing personal budget data (id. at 35:22-40:21).

Importantly, however, at no time were the funds in the Loebs' bank account stored at LPI. (Id. at 101:17-19.) Nor did LPI have any authority to remove money from the Loebs' account. (Id. at 87:16-24.) LPI admits it did not own the Loebs' personal funds. (Id. at 93:9-12.) Finally, LPI does not argue that it had the authority to direct how the Loebs spent those funds.

---

various personal accounts, so for convenience, the Court will refer to them as one account.

In March of 2006, LPI discovered that Mrs. Edwards had been stealing funds from Bob and Kathy Loeb's personal checking account. (Def.'s Stmnt. of Mat. Facts 5.) Mrs. Edwards did this by "taking checks from the accounts, cashing them, and keeping the proceeds; taking checks and paying such checks to third parties for [her] own benefit; and, taking checks and paying her own personal credit cards with Bob and Kathy Loeb's funds." (Notice of Removal, Ex. 1 (Complaint for Breach of Contract and Declaratory Judgment (the "Complaint") 7-8).)

LPI claims that Mrs. Edwards stole a total of $384,446.19 between 1996 and 2006. (Pl.'s Stmnt. of Undisp. Facts 3.) Of this amount, LPI claims that $341,546.19 was stolen during the period in which the Policy was in effect. (Id.) Of the stolen funds, $16,100 was recovered from credit card companies. Mrs. Edwards also executed a promissory note in favor of LPI for $59,000. (Id. at 4.) LPI ultimately reimbursed the Loebs for $309,346 of the stolen funds, $267,446 of which LPI claims is related to Mrs. Edwards's theft during the period in which the Policy was in force.[2] (Id.) LPI sought coverage from Federal under the Policy on August 21, 2006. (Id.) Federal denied coverage in a letter dated December 18, 2006. (Id.)

---

[2] Federal disputes that LPI was vicariously liable to the Loebs for Mrs. Edwards's theft. (Def.'s Resp. to Pl.'s Stmnt. of Undisp. Facts (D.E. 22) 9-11.) It is unnecessary to rule on the issue to resolve this matter, so the Court declines to consider it.

4

This suit followed. On January 11, 2008, LPI sued Federal in the Chancery Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis, alleging breach of contract and seeking a declaratory judgment that the Policy covered LPI's losses incurred in reimbursing Bob and Kathy Loeb for Ms. Edwards's theft. (Complaint 1-6.) On February 13, 2008, Federal removed the case to this Court, asserting federal diversity jurisdiction. (Notice of Removal 1-2.) As noted above, the Parties have both moved for summary judgment.

## II. Analysis

### a. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read

5

in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly supported motion for summary judgment, the nonmoving party "must – by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also Abeita v. TransAm. Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). However, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.'" Street v. J.C. Bradford & Co., Inc., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

In considering cross-motions for summary judgment, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-

6

moving party." Beck v. City of Cleveland, Ohio, 390 F.3d 912, 917 (6th Cir. 2004) (quoting Wiley v. United States, 20 F.3d 222, 224 (6th Cir. 1994) (quotation marks omitted).

### b. Principles of Insurance Policy Interpretation Under Tennessee Law

Under Tennessee law, which governs the interpretation of the Policy, "courts interpret insurance policies using the principles that guide the construction of other contracts." Nat'l Ins. Assoc. v. Simpson, 155 S.W.3d 134, 137 (Tenn. Ct. App. 2004) (citations omitted). "[S]cope of coverage issues," such as the Court is faced with here, "present questions of law." Id. at 138 (citations omitted). In interpreting an insurance agreement, "[t]he principal goal is to ascertain and to enforce the intent of the contracting parties." Id. at 137 (citations omitted). Courts do this by construing the agreement "as a whole in a reasonable and logical manner," and by giving the agreement's terms "their natural and ordinary meaning." Id. at 137-38 (citations omitted).[3] As the insured party, LPI bears the burden of establishing coverage. Farmers Bank & Trust Co.

---

[3] LPI argues that under Tennessee law, insurance policies should be liberally construed in favor of the insured. While there is certainly language in Alcazar v. Hayes, 982 S.W.2d 845, 851-52 (Tenn. 1998), to support that proposition, subsequent Tennessee decisions also suggest that this rule applies only where policy language is ambiguous, see, e.g., Spears v. Tenn. Farmers Mutual Ins. Co., No. M2008-00842-COA-R3-CV, 2009 WL 2144066 (Tenn. Ct. App. 2009). The Court need not resolve this question – even construing the Policy liberally in favor of LPI, LPI has not established coverage.

7

of Winchester v. Transamerica Ins. Co., 674 F.2d 548, 550 (6th Cir. 1982).

### c. Coverage Under the Policy

With the above principles in mind, the Court will interpret the Policy in order to determine what showing LPI must make to establish coverage. The relevant terms of the Policy are as follows[4]:

```
I.   INSURING CLAUSES
(A)  Employee Theft Coverage
     [Federal] shall pay [LPI] for direct loss sustained by
     [LPI] resulting from Theft or Forgery committed by an
     Employee acting alone or in collusion with others.[5]
***
II.  DEFINITIONS
***
(S)  Money means currency, coin, bank notes and bullion
     ***
     (V)  Property means tangible property other than Money
     or Securities
     ***
     (Z)  Securities means negotiable and non-negotiable
     instruments representing either Money or Property
     ***
     (BB) Theft means the unlawful taking of Money,
     Securities, or Property to the deprivation of:
          (1) [LPI], solely for the purposes of Insuring
          Clause (A) [the Employee Theft Coverage
          provision]
***
III. EXCLUSIONS
(A)  No coverage will be available under this Coverage
     Section for:
     ***
     (7) indirect or consequential loss of any kind
***
IV.  OWNERSHIP
```

---

[4] Asterisks indicate where the Court has redacted portions of the Policy for clarity.
[5] Capitalized terms in the Policy are defined in the Policy.

8

>     (A) Solely for the purposes of Insuring Clauses (A)
>     [the Employee Theft Coverage provision] through (H),
>     [Federal's] liability under this Coverage Section will
>     apply only to the Money, Securities, or Property owned
>     by [LPI] or for which [LPI] is legally liable, or held
>     by [LPI] in any capacity whether or not [LPI] is
>     liable

(The Policy 12-25.)

[C]onstru[ing]" the Policy "as a whole in a reasonable and logical manner," Nat'l Ins. Assoc., 155 S.W.3d at 137-38, LPI must make the following showing to establish coverage: (1) that it suffered a direct loss; (2) to its deprivation; (3) resulting from Ms. Edwards's theft; and (4) that LPI either owned the stolen funds, was legally liable for the stolen funds, or held the stolen funds in any capacity.

The Ownership provision is key to resolving this dispute. By its plain terms, the Ownership provision limits the scope of coverage under Insuring Clause (A) – the Employee Theft Coverage provision – to employee theft of money, securities, or property that LPI owned, was legally liable for, or held in any capacity. The Court will construe "held" broadly, given the "in any capacity" language that modifies it.

LPI admits that it did not own the money in the Loebs' personal accounts, (Williams Dep. 93:9-12), so the Court must determine if LPI either was legally liable for the Loebs' personal funds or held those funds in any capacity. LPI asserts several theories under which it was legally liable for or held

9

the Loeb's personal funds.  The Court will address each of these theories in turn.

### 1. Physical Possession of the Accounts

LPI first makes a possession-based argument.  LPI argues that, because Mrs. Edwards kept Mr. Loeb's personal checkbook at her office at LPI, the funds in Mr. Loeb's account were constructively at LPI.  And, LPI argues, under American Indemnity Co. v. Southern Missionary College, 260 S.W.2d 269, 275 (Tenn. 1953), "a company who keeps property owned by another on its premises is deemed to hold that property for purposes of insurance coverage."  (Pl.'s Mem. 9.)  Therefore, LPI argues, LPI "held" the funds in the account, triggering coverage under the Policy.

There are two major problems with LPI's argument.  First, LPI's reliance on Southern Missionary College is misplaced.  In that case, a college had an insurance policy covering loss from theft.  260 S.W.2d at 270.  The college was the sole shareholder of a campus store, which was organized as a separate corporation.  Id. at 271.  The campus store was burglarized, and several thousand dollars were stolen from the store's safe.  Id. The college tried to invoke coverage under the insurance policy, but the insurer denied coverage, arguing that it was the campus store, not the college, whose property was stolen.  Id.

10

The court rejected the insurance company's attempt to distinguish between the property of the college and the property of the campus store. The court's analysis rested on Tennessee corporate law: only a legal fiction separated the parent and its wholly-owned subsidiary; the parent exercised complete control over its subsidiary; and because the college was the store's sole shareholder, the college was entitled to all the store's assets upon its dissolution. Id. at 272-73. Because of this corporate relationship, the court concluded, the college had an insurable property interest in the store's stolen funds. Id. Southern Missionary College stands for the proposition that a parent corporation has an insurable property interest in property owned by its wholly-owned subsidiary.

Southern Missionary College rests explicitly on aspects of corporate law that are inapplicable here: LPI is not, by operation of Tennessee corporate law, entitled to Mr. Loeb's assets upon Mr. Loeb's "dissolution." Southern Missionary College also presents a different factual scenario than this case, where the "parent" – Mr. Loeb – owned the subject property, and the "subsidiary" – LPI – is claimed to have held the property.

A more fundamental problem with LPI's possession-based argument is that LPI has cited no authority for the proposition that Mrs. Edwards's possession of the checkbook gave LPI

11

constructive possession of the funds in the Loebs' personal accounts. The law is contrary to that proposition. See Carmichael v. Gov't of the Virgin Islands, No. CRIM.A.2002/164, 2004 WL 3222756 (D.V.I. 2004) (employee with access to checkbook and some limited duties to prepare checks did not possess the funds in employer's checking account). Accordingly, LPI did not possess the funds in the Loebs' account, and thus did not hold them in a possessory manner.

### 2. Bailment

LPI next argues that it held the funds as a bailee. Under Tennessee law:

> [a] bailment is a delivery of personalty for a particular purpose or on mere deposit, on a contract expressed or implied, that after the purpose has been fulfilled, it shall be re-delivered to the person who delivered it or otherwise dealt with according to his direction or kept until he claims it.

Merritt v. Nationwide Warehouse Co., Ltd., 605 S.W.2d 250, 252 (Tenn. Ct. App. 1980) (citations omitted). LPI argues that "[LPI] and the Loebs created a bailment when the Loebs ceded control of their accounts to [LPI]. . . . Constructive delivery of the accounts was achieved when the Loebs gave [LPI] the checkbooks for the account." (Pl.'s Mem. 11.)

The Loebs did not deliver to LPI the funds in their checking account, and did not give LPI control of those funds.

12

Where, as here, there is no express bailment contract,[6] a bailment "requires that possession and control over the subject matter pass from the bailor to the bailee. . . . [T]here must be a full transfer . . . of the property to the bailee so as to *exclude* it from the possession of the owner and give to the bailee . . . the *sole custody and control thereof*." Rhodes v. Pioneer Parking Lot, 501 S.W.2d 569, 570 (Tenn. 1973) (citing Jackson v. Metro. Gov't of Nashville, 483 S.W.2d 92 (Tenn. 1972) (emphasis added).

    LPI does not – and cannot - assert that it had control of the Loebs' funds to the exclusion of the Loebs.  According to LPI's Chief Financial Officer, Mr. and Mrs. Loeb continued to spend from the account throughout the period that Mrs. Edwards was responsible for maintaining the checkbook, (see Williams Dep. 35:18-37:4), and LPI had no authority to remove money from the account (id. at 87:16-24.)  Thus, because LPI did not control the funds in the account to the exclusion of the Loebs, LPI was not a bailee of those funds.  Cf. Lynch Props., Inc. v. Potomac Ins. Co. of Ill., 140 F.3d 622, 627-28 (5th Cir. 1998) (no bailment where account was kept in putative bailor's name and where putative bailee never had rightful possession of the account's funds).

---

[6] LPI does not assert that there was an express bailment contract, and LPI's description is of a putative implied bailment arrangement. (See Pl.'s Mem. 11-12.)

### 3. Care, Custody, and Control

LPI also argues that it had "care, custody, and control" of the funds, and that this qualifies as "holding" the funds under the [Policy]."[7] (Pl.'s Mem. 12.) "Care, custody, and control" is a term of art, used in the insurance context to denote exclusive dominion over property. See 9 Couch on Ins. § 126:22 (3d ed. 1997) (citing numerous cases); see also Stewart Warner Corp. v. Burns Int'l Sec. Servs., Inc., 527 F.2d 1025, 1029 (7th Cir. 1975); Travelers Ins. Co. v. Pub. Ice Serv., Inc., 1991 WL 110359, at *2-4 (Tenn. Ct. App. 1991).

LPI did not have exclusive dominion over the Loebs' personal bank account. As LPI acknowledges, the money in the Loebs' account was in the bank, and LPI lacked authority to direct how the Loebs spent those funds. Accordingly, LPI did not have "care, custody, and control" of the funds in the Loebs' personal bank accounts as the term is used in the insurance context.

### 4. Custody

LPI also argues that it had custody of the Loebs' personal funds by virtue of Mrs. Edwards's duties toward the accounts. Custody tends to encompass an aspect of at least minimal

---

[7] LPI argues that it had "care, custody, and control," as well as "custody" and "control" over the Loebs' accounts. (See Pl.'s Mem. 12-13.) The Court construes LPI's argument to thus state three theories of holding the Loebs' property: "care, custody, and control"; "custody"; and "control." Because LPI does not assert an independent "care" theory of holding the Loebs' property, the Court declines to decide that issue.

14

rightful control over the subject property. See, e.g., Blansit v. Hyatt Corp. of Del., 874 F.2d 1015, 1017 (5th Cir. 1989); Truck Ins. Exchange v. Bill Olinger Mercury, Inc., 495 P.2d 1201, 1203-04 (Or. 1972); Tripp v. U.S. Fire Ins. Co. of N.Y., 44 P.2d 236, 238 (Kan. 1935). Here, Mrs. Edwards had no rightful control over the funds, at least after they were deposited at the bank. According to LPI, once funds were in the account, Mrs. Edwards's duties were limited to receiving and reconciling account statements and preparing checks for Mr. Loeb's signature. This simply does not rise to the level of custody over the money itself.

### 5. Control

LPI also asserts it had control over the funds in the Loebs' account. "Control is defined as 'power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." Cmty. Bank of E. Tenn. v. Tenn. Dep't of Safety, No. E2004-00975-COA-R3CV, 2004 WL 1924018, at *3 (Tenn. Ct. App. 2004) (quoting Black's Law Dictionary 329 (6th ed. 1990)). Control requires some element of decision-making authority with regard to the subject property.

LPI did not "control" the Loebs' personal bank account. Whatever duties LPI had toward the Loebs' account, LPI did not have any authority to tell Mr. and Mrs. Loeb how and when they

15

should spend their money.  Accordingly, LPI did not have control over the funds in the Loebs' personal accounts.

### 6. Contractual Obligation

LPI also argues that it "held" the funds under some "contractual obligation" to do so.  According to LPI's Chief Financial Officer, Mr. Williams, LPI agreed to provide Mrs. Edwards's services in exchange for the Loebs' providing access to their financial information.  The reason for this arrangement, Mr. Williams testified, was that lenders would assess the Loeb brothers' personal financial health in making lending decisions with regard to LPI.  (Id. at 42:3-22.)

LPI has not provided authority for the proposition that such a contractual duty toward a bank account qualifies as "holding" the funds in the account for purposes of an insurance agreement.  The Court therefore declines to reach the conclusion that under Tennessee law performing ministerial duties toward a bank account qualifies as holding the funds in that account.

### 7. Legal Liability for the Funds

Finally, LPI seeks to invoke coverage under the Ownership provision's "legally liable for" clause.  LPI's argument is two-fold: that it was "legally liable to Bob Loeb"; and that because it held the Loebs' funds under the theories discussed above, LPI was legally liable for those funds.  The Court will address each contention in turn.

16

The Policy's plain language contradicts LPI's first argument.  See Griffin v. Shelter Mut. Ins. Co., 18 S.W.3d 195, 200 (Tenn. 2000) ("[L]ike any other contract, . . . this Court has a duty to enforce insurance contracts according to their plain terms.") (citation and quotation marks omitted).  The Policy covered LPI when it was "legally liable *for*" property.  That is, the Policy covered LPI when it had a specific legal duty as to property.  This concept is distinct from an employer's vicarious legal liability to a property owner arising out of an employee's harmful actions toward that property.  See Vons Cos., Inc. v. Fed. Ins. Co., 212 F.3d 489, 491-92 (9th Cir. 2000)("legally liable for" provision in employer's insurance agreement did not cover vicarious liability for employee's dishonesty); Lynch Props., Inc. v. Potomac Ins. Co. of Ill., 140 F.3d 622, 629-30 (5th Cir. 1998)(employee theft policies are not broad-based liability policies covering all wrongs committed by an employee).  Thus, even if LPI had been vicariously liable to Bob Loeb for Mrs. Edwards's theft, that liability did not make it legally liable for the property that was stolen.

LPI's second argument – that it was legally liable for the property because it held the property - is merely a restatement of the arguments rejected above.  Moreover, reading the "held in any capacity" clause and the "legally liable for" clause to mean the same thing would render one of them superfluous, contrary to

17

Tennessee principles of insurance agreement interpretation. <u>See</u> <u>Maggart v. Almany Realtors, Inc.</u>, 259 S.W.3d 700, 703-04 (Tenn. 2008) (contracts must be interpreted so as to give meaning to every provision). Accordingly, LPI was not "legally liable for" the funds in the Loebs' personal accounts.

### d. Conclusion

Because LPI has failed to show that the stolen property was subject to the Policy's Ownership section, LPI has failed to meet its burden to establish coverage under the Policy. The Court therefore GRANTS Federal's motion for summary judgment. LPI's motion for summary judgment is dismissed as moot.

IT IS SO ORDERED this 30th day of September, 2009.

<u>Jon P. McCalla</u>
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE